COUNTY OF ORANGE, Respondent, *v.* STORM KING STONE COM-
PANY and PHILIP A. MOSMAN, as Trustee, Appellants.

Second Department, November 23, 1917.

Eminent domain — condemnation of lands for highway purposes —
when appeal may not be taken from order appointing commis-
sioners — erroneous allowance for consequential damages recovered
in prior proceeding.

The provisions of the General Condemnation Law supplement statutes to
acquire lands for highways and do not allow appeals from interlocutory
judgments.

The only ground for review of an interlocutory order appointing com-
missioners by a separate appeal before the Commission reports would
be where it plainly appears that the taking was not for a permitted
public use or was otherwise in excess of the right of eminent domain.

Hence, an order, appointing commissioners in a proceeding under section
148 of the Highway Law to acquire lands at the base of a mountain
along which a State highway was being constructed so as to furnish a
place for the excavated material which necessarily, as the result of
blasting operations, descended upon such land, is not reviewable by appeal,
as the taking of the lands is for a permitted public use and is not in
excess of the right of eminent domain.

A provision in the judgment requiring the commissioners to make an
allowance for the prior consequential damages recovered for the property
sought to be obtained in this proceeding was erroneous and should be
stricken out.

BLACKMAR, J., dissented, with opinion.

APPEAL by the defendants, Storm King Stone Company
and another, from a judgment or order of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of
the county of Orange on the 27th day of March, 1917, upon
the decision of the court after a trial before the court without
a jury at the Rockland Special Term.

The judgment or order decreed the condemnation of certain
land belonging to the defendants for the purpose of construct-
ing a State highway along the face of Storm King Mountain,
and appointed commissioners of appraisal.

The right of way for such a road had been obtained under a
judgment of condemnation dated January 30, 1915. On
July 30, 1915, a contract had been entered into for the con-
struction of the road according to plans and specifications.

The proposed road is part of a State system, being State route No. 3, known as the Cornwall-West Point, parts 1 and 2, State highway No. 5498, upon the western side of the Hudson river. The cut into and across the face of Storm King, about 270 feet above its base, involved peculiar difficulties. The rock front of the mountain rises at a slope of about sixty degrees. In March, 1916, blasting operations had caused the descent of boulders and other rock fragments forming a sort of talus about the base of the mountain, with other like debris scattered upon defendants' land beyond the mountainside and towards the river.

On September 8, 1916, defendants obtained an injunction *pendente lite* enjoining the contractor from casting upon defendants' premises any boulders, rocks or debris resulting from the contractor's work here, or other work in the construction of this highway. This effectually stopped and suspended operations at this rock cutting.

On December 26, 1916, the State Commission of Highways made an order determining that public necessity required that additional lands be taken, which order the board of supervisors of Orange county carried out by the necessary resolution to acquire these lands, so that this condemnation proceeding followed. Appellants maintained that such taking did not properly come within section 148 of the Highway Law (Consol. Laws, chap. 25; Laws of 1909, chap. 30),* which, after declaring that the board of supervisors may acquire land for the requisite right of way, prior to the actual commencement of the work of construction, goes on to give a general power to " acquire lands for the purpose of obtaining gravel, stone or other material, when required for the construction, improvement or maintenance of highways, or for spoil banks, together with a right of way to such spoil banks and to any bed, pit, quarry, or other place where such gravel, stone or other material may be located."

After hearing testimony, the court sustained the petition, and appointed three commissioners. Defendants appealed " from each and every part of said judgment or order."

---

* Since amd. by Laws of 1917, chap. 261.—[REP.

*Louis Marshall,* for the appellants.

*Percy V. D. Gott,* for the respondent.

PUTNAM, J.:

The provisions of the General Condemnation Law (Code Civ. Proc. chap. 23, tit. 1) supplement statutes to acquire land for highways. (*County of Orange* v. *Ellsworth,* 98 App. Div. 275, 280.) The Condemnation Law does not allow appeals from interlocutory judgments, and such is this judgment appointing commissioners. (*Erie R. R. Co.* v. *Steward,* 59 App. Div. 187; *Village of St. Johnsville* v. *Smith,* 61 id. 380; *Stillwater, etc., R. Co.* v. *B. & M. R. R.,* 67 id. 367.)

The only ground to review such an order by a separate appeal before the commission should report, would be where it plainly appeared that the taking was not for a permitted public use, or was otherwise in excess of the right of eminent domain. (*Matter of City of Rochester* [*In re Neun*], 102 App. Div. 99.)

The Legislature has devolved on the highway officials ample powers, not only in the laying out of highways, but afterwards for the construction, improvement and maintenance thereof. Section 148 of the Highway Law divides these superadded powers that follow the original laying out and condemnation of a highway into two groups. One is to acquire more land as a source to obtain road material, such as the taking of a gravel bed or stone quarry. The other is to get a place for excavated material, debris or rubbish, which is described by the engineering term "spoil bank," defined by the Century Dictionary [revised ed.] as "a heap of earth or stone excavated from a railway or other cutting and not needed for an adjacent filling." If the determination of the State Commission of Highways in this matter be not strictly controlling, still great weight should be given to such a conclusion by the State authority, which is charged with the duty to administer this statute.

We cannot, therefore, pronounce this an improper application for land, or hold that excessive powers have been arrogated, so that on its face the petition should have been rejected. This conclusion in effect takes away our power to entertain the defendants' appeal from so much of the order as appoints commissioners.

In the paragraph of the judgment or order numbered 10th was a direction that in ascertaining this compensation allowance should be made for the fact that in prior condemnation proceedings for the right of way of this highway the Storm King Stone Company had received compensation for the consequential injury to the residue of its property, which residue included the premises sought to be acquired herein. The judgment had properly provided that the present taking shall be subject to any rights, easements or privileges in the land which plaintiff had heretofore acquired. To that extent the commissioners would consider such acquired rights under the prior condemnation. But the above language might leave them bound to consider and follow a prior appraisal, and thus not to decide and fix the damage to the property as of the time of the taking, and in its then condition, which is the rule in such condemnation.

Hence this provision requiring the commissioners to make an allowance for the prior consequential damages recovered for this property was error, and, therefore, all the 10th paragraph after the 4th line should be stricken from the judgment. A like modification should be made in the decision, as respects the finding of fact numbered XI, and the 10th conclusion of law.

Therefore, the appeal from so much of the order appointing commissioners is dismissed, without prejudice to a future appeal from the order of confirmation under section 3375 of the Code of Civil Procedure; but the 10th paragraph of the judgment, with the corresponding parts of the decision, are stricken out, without costs of this appeal to either party.

Jenks, P. J., Thomas and Mills, JJ., concurred; Blackmar, J., read for reversal and dismissal of the proceedings, with costs.

Blackmar, J. (dissenting):

The question of necessity was not before the court for adjudication. The decision of this question was vested by the Highway Law in administrative officers, whose decision cannot be reversed and does not need confirmation by the courts. The function of the court was the appointment of commissioners. The question whether the use was for a

public purpose or authorized by law is in its essence a judicial one, and the decision of the question is necessarily involved in the action of the court in appointing commissioners. The landowner may at any time in the proceedings raise the issue whether the taking is for a public purpose or is authorized by statute. This has been done by the interposition of defendant's answer in this case, and the question is properly before us for review.

The proposed highway passes along the face of Storm King Mountain, 300 feet above the surface of the Hudson river. The mountain is very steep, rising 260 feet in 215, a slope of over fifty degrees. To cut the highway in the face of the mountain it is necessary to remove large quantities of rock. The defendant owns the land with buildings thereon, both above the highway and below, between the highway and the river, except the right of way of the West Shore railroad. In blasting for the highway large quantities of rock were thrown and rolled down upon defendant's land and buildings. The defendant obtained an injunction against the continuance of the trespass, and the State and county officials have undertaken to acquire all defendant's land, consisting of about twenty-three acres, below the highway in order to continue the same method of disposing of the excavated rock by throwing and rolling it down the mountainside. To determine whether they have the power so to do, reference must be had to the Highway Law, which is their charter    Section 148 of that law authorizes the board of supervisors of the county to " acquire land for the requisite right of way prior to the actual commencement of the work of construction." (Consol. Laws, chap. 25 [Laws of 1909, chap. 30], § 148.) Not only is there no claim that the twenty-three acres in question were for the requisite right of way, but the land for that purpose has already been taken. The only remaining power is to " acquire lands for the purpose of obtaining gravel, stone or other material, when required for the construction, improvement or maintenance of highways, or for spoil banks, together with a right of way to such spoil banks and to any bed, pit, quarry, or other place where such gravel, stone or other material may be located." The plaintiff claims that the land is taken for a spoil bank, and it is obvious that this is the only purpose

over which even an argument is possible.  A spoil bank is a heap of waste material thrown off in construction.  The term is sometimes used somewhat inaccurately for the area of land on which the spoiled material is placed.  By no stretch of interpretation can loose rock cast through the air by blasting and rolled and tumbled down the mountainside, lodging anywhere on an area of twenty-three acres, be called a spoil bank.  The term implies that the spoiled material is gathered together into a bank.  Even the plaintiff's own witness says that the land is not for a spoil bank in the common sense of the term.  The learned justice says in his memorandum opinion: " The land now sought to be acquired by the plaintiff is necessary for the building and completion of the highway."  Much might be said on the subject, but the question is not whether the land is necessary, but whether the purpose of the taking was authorized by law.

Undoubtedly the State has power to take land incidentally useful in the construction of work for public purposes.  Nor do I doubt that the State has power to take land situated as is the defendant's, for the purpose contemplated, for the power of the State to resume possession of land of which the people are deemed to possess the original and ultimate title (Const. art. 1, § 10), is subject only to the constitutional provision that the use for which it is taken shall be public and that just compensation shall be made.  (Const. art. 1, § 6.)  But where the exercise of the right of eminent domain is confided to officers of the State or to a municipality, the act which confers the power necessarily limits the purposes for which it may be exerted.  The purposes must, therefore, be found in the act.  I have already enumerated these purposes.  The power to take is limited to such purposes, and it does not include the taking for any other purpose, even though useful, or, in the opinion of the court, necessary to the work.  The situation is peculiar, and the statute does not provide for it.

I concur with the prevailing opinion that it was error to include in the order directions to the commissioners as to the principles to govern them in making the award.  These directions, in my opinion, are erroneous, for the only question before them is the value of the land as it is, but whether erroneous or not, they have no proper place in the order.

Second Department, November, 1917.            [Vol. 180.

The judgment and order appointing commissioners should be reversed and the proceeding dismissed, with costs.

Appeal from so much of the order appointing commissioners dismissed, without prejudice to a future appeal from the order of confirmation under section 3375 of the Code of Civil Procedure; the 10th paragraph of the judgment, with the corresponding parts of the decision, are stricken out, without costs of this appeal to either party.